UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JAMES K. BISHOP,**

    **Plaintiff,**

  v.                                  Civil Action 2:26-cv-37
                                           Judge Michael H. Watson
                                           Magistrate Judge Chelsey M. Vascura

**OHIO DEPARTMENT OF
CORRECTIONS,** *et al.***,**

    **Defendants.**

## ORDER and REPORT AND RECOMMENDATION

Plaintiff, James K. Bishop, an Ohio inmate who is proceeding without the assistance of counsel, sues the Ohio Department of Rehabilitation and Corrections ("ODRC") and several of its employees under 42 U.S.C. § 1983 for violation of his Eighth and Fourteenth Amendment rights. This matter is before the Court for the initial screen of Plaintiff's Complaint, as amended, under 28 U.S.C. §§ 1915(e)(2) and 1915A to identify cognizable claims and to recommend dismissal of Plaintiff's Amended Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1)–(2); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997). Having performed the initial screen, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's Complaint for failure to state a claim on which relief may be granted.

This matter is also before the Court for consideration of Plaintiff's motion for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1) and (2), which is **GRANTED**. (ECF

No. 1.) Plaintiff must pay the full amount of the Court's $350 filing fee. 28 U.S.C. § 1915(b)(1). Plaintiff's certified trust fund statement reveals that he has $48.60 in his prison account, which is insufficient to pay the filing fee.

Pursuant to 28 U.S.C. § 1915(b)(1), the custodian of Plaintiff's inmate trust accounts (Inmate ID Number 704375) at the Noble Correctional Institution is **DIRECTED** to submit to the Clerk of the United States District Court for the Southern District of Ohio as an initial partial payment, 20% of the greater of either the average monthly deposits to the inmate trust account or the average monthly balance in the inmate trust account, for the six months immediately preceding the filing of the Complaint.

After full payment of the initial, partial filing fee, the custodian shall submit 20% of the inmate's preceding monthly income credited to the account, but only when the amount in the account exceeds $10.00, until the full fee of $350.00 has been paid to the Clerk of this Court. 28 U.S.C. § 1915(b)(2). *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Checks should be made payable to: Clerk, United States District Court. The checks should be sent to:

>Prisoner Accounts Receivable
>260 U.S. Courthouse
>85 Marconi Boulevard
>Columbus, Ohio 43215

The prisoner's name and this case number must be included on each check.

It is **ORDERED** that Plaintiff be allowed to prosecute his action without prepayment of fees or costs and that judicial officers who render services in this action shall do so as if the costs had been prepaid. The Clerk of Court is **DIRECTED** to mail a copy of this Order to Plaintiff and the prison cashier's office.

I.      BACKGROUND

Plaintiff alleges that, prior to his incarceration in 2018, he suffered a hip injury that requires the use of a cane and a restriction to bottom bunk/range. (Compl. ¶ 11, ECF No. 1-1.) When he first arrived at Mansfield Correctional Institution in 2018, he was prescribed a bottom bunk/range restriction and given a cane by medical staff. (*Id.* at ¶ 11.) In February 2023, Plaintiff was transferred to Noble Correctional Institution ("NCI") and was again given a bottom bunk/range restriction after x-rays of Plaintiff's right hip showed severe signed of arthritis. (*Id.* at ¶ 12.) In March 2024, Defendant Collins, a nurse at NCI renewed Plaintiff's restrictions to "Low Bunk & Low Range" through March 27, 2025. (*Id.* at ¶ 14; Medical Bunk Restrictions, ECF No. 1-2, PAGEID #24.) On March 10, 2025, Plaintiff was placed in the Transitional Program Unit in restrictive housing ("TPU") for five days. Plaintiff was prevented by non-party Lt. Harper from taking his cane with him to TPU. (Compl. ¶ 15, ECF No. 1-1; Grievance #541199371, ECF No. 1-2, PAGEID #27.) Plaintiff filed a grievance upon his release from TPU that was initially granted on April 9, 2025, by non-party R. Heskett, who stated "[y]our cane should not being taken away from you upon your arrival in TPU. This was addressed with Lt. Harper in TPU." (Grievance #541199371, ECF No. 1-2, PAGEID #27.) However, on September 1, 2025, Defendant Karen Stanforth (ODRC's Assistant Chief Inspector for Medical Concerns) reversed the granting of Plaintiff's grievance, stating that Plaintiff's medical records did not reflect any mobility deficits requiring a cane. (*Id.* at PAGEID #26.) Ms. Stanforth stated that

> You have no history of arthritis recorded, no documentation to reflect an unsteady gaits when navigating the yard and no history of any muscular diseases. . . . As clearly stated in your record, there are no indications you need a cane and you should no longer have one because the order expired on 3/25/25. There is no follow up evaluation since that time for a cane.

(*Id.*) Plaintiff was reevaluated for his hip injury in September 2025, including an x-ray which reflected severe damage to his right hip. Non-party Mrs. Cunningham informed Plaintiff that he

3

qualified for a hip replacement and that NCI medical staff would arrange an appointment for Plaintiff with an orthopedic doctor. (Compl. ¶ 20, ECF No. 1-1.)

Plaintiff advances claims for violation of his Eighth and Fourteenth Amendment rights against ODRC, ODRC Director Annette Chambers-Smith, Assistant Chief Inspector Stanforth, Assistant Chief Inspector K. Morrow, Inspector E. Obeng-Robertson, NCI, NCI Warden Forshey, NCI Nurse Collins, and an Unknown Nurse. He seeks compensatory and punitive damages as well as injunctive relief. (Compl. ¶¶ 35–37, ECF No. 1-1.)

## II. STANDARD OF REVIEW

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e):

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> * * *
>
> (B) the action or appeal—
>
> (i) is frivolous or malicious; [or]
>
> (ii) fails to state a claim on which relief may be granted. . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted. *See also* 28 U.S.C. § 1915A (requiring a court to conduct a screening of "a complaint in a civil action

4

in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity . . . [to] identify cognizable claims or dismiss the complaint, or any portion of the complaint [that is] frivolous, malicious, or fails to state a claim upon which relief may be granted").

Further, to state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "detailed factual allegations, a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A complaint will not "suffice if it tenders naked assertion devoid of further factual enhancement." *Id.* (cleaned up). Instead, to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id.* (cleaned up). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "to less stringent standards than

5

formal pleadings drafted by lawyers." *Garrett v. Belmont Cty. Sheriff's Dep't*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "courts should not have to guess at the nature of the claim asserted." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### III.   ANALYSIS

The undersigned construes Plaintiff's Complaint to advance a due process claim under the Fourteenth Amendment claim and a claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment. Plaintiff's allegations do not sufficiently state either claim.

First, to the extent that Plaintiff's Fourteenth Amendment claim is premised on his dissatisfaction with the handling of his administrative grievance, that claim fails because "there is no inherent constitutional right to an effective grievance procedure." *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (citing *Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). There is also no "constitutional right to a detailed opinion from a grievance coordinator in a prison grievance system." *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 447 (6th Cir. 2005).

Nor did Stanforth's reversal of the granting of Plaintiff's grievance related to his cane "six months after [Plaintiff]'s restrictions expired and without first having him reevaluated" reflect a "deni[al of Plaintiff's] right to due process." (Compl. ¶ 27, ECF No. 1-1.) "The Fourteenth Amendment prohibits states from depriving individuals of life, liberty, or property without due process of law." *Johnson v. Morales*, 946 F.3d 911, 921 (6th Cir. 2020) (citing U.S. Const. amend. XIV, § 1). To establish a Fourteenth Amendment procedural due process

6

violation, a plaintiff must show that a liberty or property interest is at stake. *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). Thus, procedural due process analysis involves two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corrs. v. Thompson,* 490 U.S. 454, 460 (1989) (citations omitted). "In other words, the question of what process is due is relevant only if the inmate establishes a constitutionally protected interest." *Pickelhaupt v. Jackson*, 364 F. App'x 221, 224 (6th Cir. 2010) (citing *Wilkinson*, 545 U.S. at 224). The undersigned is unable to discern any liberty or property interest implicated by Stanforth's reversal of the granting of Plaintiff's grievance. Plaintiff has not alleged that anything changed for him as a result of the reversal. For instance, he has not alleged that his cane was taken away from him or that his bunk and range restrictions were revoked. Nor has he alleged that his cane was never returned to him after his five-day stint in TPU (or that he no longer received the low bunk and low range restrictions upon release from TPU) and that Stanforth's reversal made those losses permanent. As Plaintiff has not identified a liberty or property interest, his due process claim fails.

As to Plaintiff's Eighth Amendment claim, it is well established that "[t]he Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his] serious medical needs." *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotations omitted). A claim for deliberate indifference "has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The United States Court of Appeals for the Sixth Circuit has explained:

> The objective component mandates a sufficiently serious medical need. [*Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004).] The subjective component

> regards prison officials' state of mind. *Id.* Deliberate indifference "entails something more than mere negligence, but can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 895–96 (internal quotation marks and citations omitted). The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 896 (internal quotation marks and citation omitted).

*Barnett*, 414 F. App'x at 787–88; *see also Jones*, 625 F.3d at 941 ("[T]he prison official must have acted with a state of mind similar to recklessness. Thus, to prove the required level of culpability, a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk.") (citations omitted). "In examining whether a claimed injury is 'sufficiently serious'" to sustain a claim for deliberate indifference, "courts look to the *effect* of any delay in treatment caused by an officer's inaction." *Vaughn v. City of Lebanon*, 18 F. App'x 252, 274 (6th Cir. 2001) (emphasis in original). Specifically, a plaintiff "who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Id.* (citing *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001)).

> The Sixth Circuit has also noted that in the context of deliberate indifference claims:
>
> "[W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Id.* However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id.*

*Alspaugh*, 643 F.3d at 169. *See also Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) ("If the plaintiff's claim, however, is based on the prison's failure to treat a condition adequately . . . the plaintiff must place verifying medical evidence in the record to establish the detrimental

8

effect of the delay in medical treatment." (internal quotation marks and citation omitted)). Moreover, "when a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id.* at 591. (cleaned up).

Here, Plaintiff does not allege that his medical needs were not met. He alleges that a non-party, Lt. Harper, deprived him of the use of his cane for five days in March 2025, but his Complaint does not explain how Lt. Harper's actions could be attributed to any of the named Defendants.[1] He also alleges that it was discovered in September 2025 that his medical restrictions for a low bunk and low range expired in March 2025, and that he was then promptly reevaluated later that month and given a referral to an orthopedic specialist. None of these allegations suggest that any individual was subjectively aware of any serious medical need and refused to act. Plaintiff's Eighth Amendment claim must therefore be dismissed.

## IV. DISPOSITION

Plaintiff's motion for leave to proceed *in forma pauperis* (ECF No. 1) is **GRANTED**. It is **RECOMMENDED** that the Court **DISMISS** Plaintiff's Complaint for failure to state a claim on which relief may be granted.

---

[1] To the extent that Plaintiff alleges that NCI Warden Forshey or ODRC Director Chambers-Smith are responsible for Lt. Harper's actions because they are responsible for supervising NCI employees, those claims fail. This is because "§ 1983 liability cannot be imposed under a theory of *respondeat superior*." *Id.* (citation omitted). Thus, to hold a supervisor liable under § 1983, a plaintiff "must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (cleaned up). Plaintiff does not allege that either Forshey or Chambers-Smith had this level of involvement in Lt. Harper's actions.

## **PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE