UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES K. BISHOP,

        Plaintiff,

    v.

OHIO DEPARTMENT OF
CORRECTIONS, *et al.*,

        Defendants.

Civil Action 2:26-cv-37
Judge Michael H. Watson
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Plaintiff, James K. Bishop, an Ohio inmate who is proceeding without the assistance of counsel, sues the Ohio Department of Rehabilitation and Corrections ("ODRC"), Noble Correctional Institution, and several of their employees under 42 U.S.C. § 1983 for violation of his Eighth and Fourteenth Amendment rights, as well as for violations of several Ohio statutes and regulations. This matter is before the Court for the initial screen of Plaintiff's Complaint, as amended, under 28 U.S.C. §§ 1915(e)(2) and 1915A to identify cognizable claims and to recommend dismissal of Plaintiff's Amended Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1)–(2); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997). Having performed the initial screen, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's federal claims for failure to state a claim on which relief may be granted, and that Plaintiff's remaining state-law claims be **DISMISSED WITHOUT PREJUDICE** to re-filing in state court.

## I.    BACKGROUND

Plaintiff alleges that, when he was initially incarcerated at Mansfield Correctional Institution in 2018, he was prescribed a bottom bunk/range restriction and given a cane by medical staff due to a pre-existing hip injury that requires a hip replacement. (Am. Compl. ¶ 11, ECF No. 4.) In March 2024, Defendant Collins, a nurse at NCI, renewed Plaintiff's restrictions to "Low Bunk & Low Range" through March 27, 2025. (*Id.* at ¶ 12; Medical Bunk Restrictions, ECF No. 4, PAGEID #75.) On March 10, 2025, Plaintiff was placed in the Transitional Program Unit in restrictive housing ("TPU") for five days. Plaintiff was prevented by non-party Lt. Harper from taking his cane with him to TPU. (Am. Compl. ¶ 14, ECF No. 4; Grievance #541199371, ECF No. 4, PAGEID #78.) Plaintiff filed a grievance upon his release from TPU that was initially granted on April 9, 2025, by non-party R. Heskett, who stated "[y]our cane should not being taken away from you upon your arrival in TPU. This was addressed with Lt. Harper in TPU." (Grievance #541199371, ECF No. 4, PAGEID #78.) However, on September 1, 2025, Defendant Karen Stanforth (ODRC's Assistant Chief Inspector for Medical Concerns) reversed the granting of Plaintiff's grievance, stating that Plaintiff's medical records did not reflect any mobility deficits requiring a cane. (*Id.* at PAGEID #77.) Ms. Stanforth stated that

> You have no history of arthritis recorded, no documentation to reflect an unsteady gaits when navigating the yard and no history of any muscular diseases. . . . As clearly stated in your record, there are no indications you need a cane and you should no longer have one because the order expired on 3/25/25. There is no follow up evaluation since that time for a cane.

(*Id.*) Plaintiff was reevaluated for his hip injury in September 2025, including an x-ray which reflected severe arthritis and damage to his right hip. Non-party Mrs. Cunningham informed Plaintiff that he qualified for a hip replacement. Plaintiff is currently being seen by Dr. Sullivan, an orthopedic doctor, for his hip replacement. (Am. Compl. ¶ 19, ECF No. 4.)

Plaintiff's Amended Complaint contains three counts: (1) Medical Negligence and Malpractice under several Ohio Administrative Code and Ohio Revised Code provisions, as well as the Eighth Amendment, (2) Dereliction of Duty to Plaintiff's medical needs under the Ohio Revised Code and the Eighth Amendment, and (3) Due Process violations under several Ohio Administrative Code and Ohio Revised Code provisions, as well as the Fourteenth Amendment. (*Id.* at ¶¶ 20–52.) He seeks compensatory and punitive damages as well as injunctive relief. (*Id.* at ¶¶ 53–55.)

## II.     STANDARD OF REVIEW

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e):

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> * * *
>
> (B) the action or appeal—
>
> (i) is frivolous or malicious; [or]
>
> (ii) fails to state a claim on which relief may be granted. . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted. *See also* 28 U.S.C. § 1915A (requiring a court to conduct a screening of "a complaint in a civil action

3

in which a prisoner seeks redress from a governmental entity or officer or employee of a

governmental entity . . . [to] identify cognizable claims or dismiss the complaint, or any portion

of the complaint [that is] frivolous, malicious, or fails to state a claim upon which relief may be

granted").

Further, to state a claim upon which relief may be granted, a plaintiff must satisfy the

basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also*

*Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure

12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule

8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual

demands on the authors of complaints." *16630 Southfield Ltd*., *P'Ship v. Flagstar Bank*, *F.S.B.*,

727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "detailed factual allegations, a pleading

that offers labels and conclusions or a formulaic recitation of the elements of a cause of action"

is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A complaint will not

"suffice if it tenders naked assertion devoid of further factual enhancement." *Id.* (cleaned up).

Instead, to state a claim upon which relief may be granted, "a complaint must contain sufficient

factual matter to state a claim to relief that is plausible on its face." *Id*. (cleaned up). Facial

plausibility is established "when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The

plausibility of an inference depends on a host of considerations, including common sense and the

strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504

(citations omitted). Further, the Court holds *pro se* complaints "to less stringent standards than

formal pleadings drafted by lawyers." *Garrett v. Belmont Cty. Sheriff's Dep't*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "courts should not have to guess at the nature of the claim asserted." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### III.    ANALYSIS

The undersigned construes Plaintiff's Complaint to advance (1) a procedural due process claim under the Fourteenth Amendment, (2) a claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment, (3) a state-law medical malpractice claim, and (4) a state-law dereliction of duty claim.

Plaintiff's allegations do not sufficiently state either of his federal claims. First, to the extent that Plaintiff's Fourteenth Amendment claim is premised on his dissatisfaction with the handling of his administrative grievance, that claim fails because "there is no inherent constitutional right to an effective grievance procedure." *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (citing *Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). There is also no "constitutional right to a detailed opinion from a grievance coordinator in a prison grievance system." *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 447 (6th Cir. 2005).

Nor did Stanforth's reversal of the granting of Plaintiff's grievance related to his cane "six months after [Plaintiff]'s restrictions expired and without first having him reevaluated" reflect a "deni[al of Plaintiff's] right to due process." (Compl. ¶ 27, ECF No. 1-1.) "The Fourteenth Amendment prohibits states from depriving individuals of life, liberty, or property without due process of law." *Johnson v. Morales*, 946 F.3d 911, 921 (6th Cir. 2020) (citing U.S.

5

Const. amend. XIV, § 1). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that a liberty or property interest is at stake. *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). Thus, the procedural due process analysis involves two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corrs. v. Thompson,* 490 U.S. 454, 460 (1989) (citations omitted). "In other words, the question of what process is due is relevant only if the inmate establishes a constitutionally protected interest." *Pickelhaupt v. Jackson*, 364 F. App'x 221, 224 (6th Cir. 2010) (citing *Wilkinson*, 545 U.S. at 224). The undersigned is unable to discern any liberty or property interest implicated by Stanforth's reversal of the granting of Plaintiff's grievance. Plaintiff has not alleged that anything changed for him as a result of the reversal. For instance, he has not alleged that his cane was taken away from him or that his bunk and range restrictions were revoked. Nor has he alleged that his cane was never returned to him after his five-day stint in TPU (or that he no longer received the low bunk and low range restrictions upon release from TPU) and that Stanforth's reversal made those losses permanent. And Plaintiff's assertion that "[his] 'LIBERTY' was taken away from [him] when [Defendants] thwarted the grievance process" (Am. Compl. ¶ 50, EC No. 4) is not consistent with this Circuit's caselaw. *See Argue*, 80 F. App'x at 430 (prisoners lack a constitutional right to an effective grievance process). As Plaintiff has not identified a liberty or property interest, his due process claim fails.

As to Plaintiff's Eighth Amendment claim, it is well established that "[t]he Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his] serious medical needs." *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotations omitted). A claim for

6

deliberate indifference "has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The United States Court of Appeals for the Sixth Circuit has explained:

> The objective component mandates a sufficiently serious medical need. [*Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004).] The subjective component regards prison officials' state of mind. *Id.* Deliberate indifference "entails something more than mere negligence, but can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 895–96 (internal quotation marks and citations omitted). The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 896 (internal quotation marks and citation omitted).

*Barnett*, 414 F. App'x at 787–88; *see also Jones*, 625 F.3d at 941 ("[T]he prison official must have acted with a state of mind similar to recklessness. Thus, to prove the required level of culpability, a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk.") (citations omitted). "In examining whether a claimed injury is 'sufficiently serious'" to sustain a claim for deliberate indifference, "courts look to the *effect* of any delay in treatment caused by an officer's inaction." *Vaughn v. City of Lebanon*, 18 F. App'x 252, 274 (6th Cir. 2001) (emphasis in original). Specifically, a plaintiff "who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Id.* (citing *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001)).

> The Sixth Circuit has also noted that in the context of deliberate indifference claims:

> "[W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Id.*

7

> However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id.*

*Alspaugh*, 643 F.3d at 169. *See also Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) ("If the plaintiff's claim, however, is based on the prison's failure to treat a condition adequately . . . the plaintiff must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." (internal quotation marks and citation omitted)). Moreover, "when a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id.* at 591. (cleaned up).

Here, Plaintiff does not allege that his medical needs were not met. He alleges that a non-party, Lt. Harper, deprived him of the use of his cane for five days in March 2025, but his Complaint does not explain how Lt. Harper's actions could be attributed to any of the named Defendants.[1] He also alleges that it was discovered in September 2025 that his medical restrictions for a low bunk and low range expired in March 2025, and that he was promptly reevaluated later that month and given a referral to an orthopedic specialist. None of these allegations suggest that any individual was subjectively aware of any serious medical need and refused to act.

---

[1] To the extent that Plaintiff alleges that NCI Warden Forshey or ODRC Director Chambers-Smith are responsible for Lt. Harper's actions because they are responsible for supervising NCI employees, those claims fail. This is because "§ 1983 liability cannot be imposed under a theory of *respondeat superior.*" *Id.* (citation omitted). Thus, to hold a supervisor liable under § 1983, a plaintiff "must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (cleaned up). Plaintiff does not allege that either Forshey or Chambers-Smith had this level of involvement in Lt. Harper's actions.

8

Plaintiff's arguments that Defendants had a duty to re-evaluate his medical restrictions before they expired in March 2025, and that he was injured by having to wait six months to begin the process for a hip replacement, are unavailing. It appears that Plaintiff continued to receive his low bunk/low range restrictions even after they nominally expired in March 2025. Plaintiff fails to allege that he complained of hip pain, or requested an evaluation of his hip, such that Defendants were subjectively aware that he required further evaluation. Nor is it clear why a failure to evaluate Plaintiff's hip in March 2025 would be the cause of any delay in obtaining a hip replacement. Given that Plaintiff's injury necessitating the hip replacement occurred prior to 2018, but his evaluation in March 2024 did not result in a referral for a hip replacement, Plaintiff's allegations do not establish that an evaluation in March 2025 would have generated a hip replacement referral either. Plaintiff's Eighth Amendment claim must therefore be dismissed.

Finally, the undersigned recommends that the Court decline to exercise jurisdiction over Plaintiff's remaining state-law claims. Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction when the Court "has dismissed all claims over which it has original jurisdiction." The United States Court of Appeals for the Sixth Circuit has held that "[i]f the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (citations omitted). Here, Plaintiff's allegations relating to dereliction of duty in violation of Ohio regulations and statutes and medical malpractice fail to provide a basis for a claim over which this Court has original jurisdiction. "The basic statutory grants of federal court subject-matter jurisdiction are contained in 28 U.S.C. § 1331, which provides for federal-question jurisdiction, and § 1332, which provides for diversity of citizenship jurisdiction." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006) (cleaned up). Federal-question jurisdiction is implicated when a plaintiff pleads a claim

"arising under" the federal laws or the United States Constitution. *Id*. (citation omitted). For a federal court to have diversity jurisdiction under § 1332(a), there must be complete diversity, meaning that each plaintiff must be a citizen of a different state than each defendant, and the amount in controversy must exceed $75,000. *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

Plaintiff's remaining claims pertain squarely to state law and do not arise under federal laws or the United States Constitution. *See Owens v. Hutchinson*, 79 F. App'x 159, 161 (6th Cir. 2003) ("A patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim.") Nor has Plaintiff alleged that he and Defendants are citizens of different states. Thus, Plaintiff has failed to plausibly allege facts on which the Court could rely to conclude that this Court has original subject-matter jurisdiction over his state-law claims. Because the undersigned is recommending dismissal of all of Plaintiff's federal claims, it is further recommended that the Court decline to exercise supplemental jurisdiction over any remaining state-law claims and that it dismiss any such claims without prejudice to filing in state court.

## IV.    DISPOSITION

It is **RECOMMENDED** that the Court **DISMISS** Plaintiff's federal claims for failure to state a claim on which relief may be granted, and that Plaintiff's remaining state-law claims be **DISMISSED WITHOUT PREJUDICE** to re-filing in state court.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with

supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE

11